Let's see, this morning we have four cases, three of which will be heard this morning, and one is being submitted on the record for purposes of the record, the oral record. The submitted case is 20115032, Chin Samuel v. United States. First orally argued case will be a trade case. Number 20101295, LEMANS CORP v. United States. Ms. Rifkin, you are reserved five minutes for rebuttal. Whenever you're ready. Good morning, Your Honors. May it please the Court, my name is Jessica Rifkin, and I represent the appellant in this case, LEMANS CORP. This is a case involving the classification of street motorcycle riding jackets and motocross pants and jerseys. LEMANS claims that these goods are properly classifiable as equipment for other sports in Heading 9506 of the HTSUS. The government claims that these goods are properly classifiable as various articles of apparel in Chapters 61 and 62. We firmly believe that these goods are properly classifiable as sports equipment. Before we get to the issue of what is equipment, as an initial matter, in order to be considered equipment for other sports, the goods must be used in sports equipment. We believe that both street motorcycle riding and motocross activities are sports, and the government disagrees with us. The term sport of Heading 9506 is not defined in the tariff. It's well settled that where a term is undefined, the correct meaning is the common meaning, which is ascertained by reference to dictionaries. Here, we believe the common meaning of the term sport is broader than an activity that involves competition or multiple players or settled rules. Did the decision below really turn on the question of whether these were sports or not? No, Your Honor, it did not. And I can go into the issues that actually were addressed below if you'd like me to, or I can address the issue of sport. If somebody disagrees with me, I think we ought to focus on the basis for the decision below, unless you want to hear more, Judge? No. Go ahead. Why don't you go ahead. With the issue of sport? Okay. We believe that the term sport, the common meaning of the term sport is broader, and that it's an activity that is a recreation, a pastime, a healthy, active pastime. If you look at the definition of sport in Webster's, it's something that is a source of pleasant diversion, a pleasing or amusing pastime or a recreation. If you look in the Oxford English Dictionary, the definition is similar. It's a pleasant pastime, entertainment or amusement, recreation or diversion, or a particular form of pastime, especially when played or carried out in the open air and involving some form of bodily exercise. But does that mean that if I like to skip rope and I wear a particular sweatshirt while I'm skipping rope, does that make the sweatshirt a sports equipment? I think skipping rope is more an activity that's, well, it can be athletics. It's outside, it's athletic, and you do get some exercise. You do. I don't know if that rises to the level of a recreation or a pastime, a hobby. I think here we've shown that to one of my daughters. Potentially, yes, Your Honor. I'm having trouble. I see the difference in my mind, and I'm afraid I'm having trouble articulating it to you. I think the difference is there has to be more involved than simply an intermittent picking up a rope and jumping over it. There has to be a greater degree of purposeful activity, recreational activity, which I think is present in both street motorcycling and motocross activities. All right. Well, even assuming that it is, even assuming that one or both of these are sports, how do you deal with the fact that there's a specific exclusion under Chapter 95 for sports clothing? I think that that question was addressed by this court in Bowernike, where the court noted that, in essence, there are dueling head notes or dueling exclusionary notes. There is the specific exclusion for sports clothing classifiable in Chapter 61 or 62 from Chapter 95. There's a similar exclusion for goods that are classifiable in Chapter 95 from Chapters 61 and 62. And I think what this court said in Bowernike is when you have these sort of dueling exclusionary notes, that the proper thing to do is to find, is to engage in a GRI 3A relative specificity analysis. That's the proper place to start. And we believe that that is where the analysis should have started here. But in Bauer, it was a GRI 3 analysis, right? Yes. And the argument from the government is that we don't even get to that point here, right? Yes, Your Honor. All right. And why do you think we do? We believe that our goods fall within the common and commercial meaning of the term equipment for other sports of Heading 9506. And we also believe that they fall within the test of what is considered to be equipment that's been laid out by this court in two prior cases. The term equipment is not defined, again, in the tariff. And so, therefore, we must turn to the common meaning, the dictionary meaning. As even the court below acknowledged, the dictionary meaning of the term equipment is something that is necessary, useful, or appropriate for whatever you're talking about. Here, it's something that's necessary, useful, or appropriate for the sports activities that the participants are engaging in. If that was the definition, then there are an awful lot of things that clearly have fallen outside the bounds of sports equipment like swimsuits or ski jackets. Why wouldn't those fall within your definition if the definition is that broad? That's because those are specifically provided for by name in tariff headings within Chapter 61 or 62. I think in that case, you would, again, go to relative specificity analysis. You would look and see, okay, sports equipment, which can cover many things for many different sports, versus a swimsuit, which is very specific.  What about wetsuits? I'm sorry? What about wetsuits? I do not believe, Your Honor, that there is a specific provision covering wetsuits, although I don't know off the top of my head. There isn't, but the case law says that it's not sports equipment, right? The case law does say it's not sports equipment. We believe that that case law is not binding on this Court, of course, because it's the Court of International Trade. We also believe that that case, H.I.N. Fathom, was wrongly decided and that it's been at least implicitly overruled by both Rollerblade and Bauer Nike. One of the main points on which that case turned was the Court's rejection of the plaintiff's argument that goods that were specifically designed and intended for use in sports were to be considered sports equipment. The Court said that that use test was incorrect and unnecessary, but that was the exact test that was used by this Court in both Rollerblade and Bauer Nike. In Rollerblade, this Court held that because the protective equipment for inline skating was specifically designed for use in inline skating, it was sports equipment. In Bauer Nike, this Court held that because the ice hockey pants were specially designed and intended only for use while playing hockey, they were prima facie classifiable as equipment for ice hockey, for skating. What if the hip protectors in the Bauer case, the ice hockey pants, were removable?  Your Honor, they were removable. Some were, but some were not. Correct. They were all removable. Your Honor, I do not believe respectfully that that would make a difference. It didn't make a difference to this Court in Bauer Nike. This Court specifically addressed the classification separately of goods, the model that had the removable hip pads, and this Court found that they were still classifiable as sports equipment because the skating equipment heading did not just focus on pads and guards. You had to look at the entire good, and the textile shell played an integral component in constituting the equipment at issue. Well, they applied the relative specificity test. If we applied it here, what result would we obtain? We believe that the result that should obtain is that these goods are more specifically provided for as sports equipment than as mere articles of apparel. The sports equipment heading, we believe, more specifically describes them. It has requirements that are harder to satisfy. The apparel headings in which the government believes that these goods should be placed are very broad. There's a myriad, for example, of sweaters, pullovers, shirts. Do you see a distinction between the garments that are at issue here? Do you differentiate between the jerseys and the pants? In terms of what, Your Honor? I'm sorry. In terms of whether they qualify as sports equipment. I believe that they both qualify as sports equipment, Your Honor. If you take Bauer Nike at its broadest reading, which we think is correct, we think that the issue of whether a good is protective or not is really not an issue to be considered in terms of whether something is sports equipment. It's whether something is necessary, useful, or appropriate for the sport at issue, or alternatively, or perhaps hand-in-hand, whether something has been specially designed and intended for use. We think both the pants and the jerseys fully satisfy both of those tests. Do you disagree with the government that we ought to be doing a percentage of padding tests? Yes, Your Honor, we do. What kind of deference are we supposed to give to the decision below at all? Not Chevron deference. Whether the decision below is entitled to Skidmore deference. Oh, I'm sorry, the Customs decision or the CIT's decision? I'm sorry. Either one. Address them both. Okay. In terms of Customs decision, I don't believe Skidmore deference either. I think Skidmore deference is given in proportion to the decision's power to persuade. We don't believe that the decision below, Customs decision, has the power to persuade because we believe that the basis on which it's formed is flawed. In essence, the decision below turns on assumptions, inferences, gleaned from examples that were provided in the explanatory notes. It assumes that based on the list of examples in the explanatory note to heading 9506, it assumes that apparel-like goods can never be included as sports equipment unless they have padding, unless the padding is a certain proportion of the garment, unless the padding has a certain thickness, unless the padding has a certain hardness, unless the padding is only present to protect against collisions, blows. In other words, it's trying to limit power to its specific facts. Well, I don't believe that it is limiting Bauer to its specific facts. I don't think that the facts that were at issue in Bauer limit the case in that way. Yes, it's true. The pants in Bauer Nike, the Court noted, had 80% of those pants by weight were comprised of guards and pads. However, if you look at the language of the decision itself, number one, the Court also specifically noted that the pants had a number of apparel-like characteristics. They specifically were made to fit comfortably, to provide ventilation to the players. In addition, the reasoning of the decision did not turn on those specific aspects of the pants. The Court looked at both things, the fact that the pants had the pads and the fact that the pants were specifically designed for use by the players in hockey, and said, okay, since these pants are specifically designed and intended for use only while playing ice hockey, they're prima facie classifiable as sports equipment. The Court did not say, we find that these pants are analogous to the examples in the explanatory notes, and therefore that's what we're basing our decision on. In fact, the Court didn't even raise the explanatory notes. Did we give any weight to the explanatory notes? The explanatory notes should be weighed case by case. As Your Honor knows, they're not binding. They're not statutory law. We believe that in this case, resort to the explanatory notes is unnecessary and in fact may even be improper. It's unnecessary because where a term is undefined, you look to the common meaning of the term. The explanatory notes are resorted to where the term is ambiguous. We don't believe that the mere fact that the term is undefined makes it ambiguous. Second, as the Court noted in Michael Simon, the Court of International Trade, where a term has been defined already by the prior court, by, for example, this court, it's improper to resort to the explanatory notes. Ms. Rifkin, you're well under your rebuttal time. I am. I know. We'll restore one minute of it. Thank you. Thank you very much. Thank you. Mr. Van Hollen. Yes. Good morning, Your Honors. May it please the Court. This Court should affirm the decision of the trial court below for the following reasons. Heading 6201, 6210, and 6110 fully describe the pants, jackets, and jerseys in their entirety as garments. These provisions make no distinction of articles of apparel of general use or of specific function, whether they have some protective features or not. They're all included within these headings, whereas the articles of equipment under 9506 are more protective in nature and have that sole purpose of being protective, at least with the articles of 9506 that have some apparel-like qualities. Is that right? Go ahead. How much protective gear does an article have to have in order to be classified as protective gear for sports purposes? I think ultimately— Does it need shoulder pads, elbow pads? Does it need pads in the front, pads in the back, so that you look like the Michelin man? Is that protective gear defined by the amount of padding in a piece of clothing? I think to answer your question, Your Honor, what makes something rise to the level of protective sports equipment, as contemplated by 9506, is substantial, compact, specific protection with minimal textile components. These are components that are only to fasten that padding or protection directly onto the wearer's body. That's what I think rises to the level of sports equipment. Oh, hockey pants were not the same way? Well, in hockey pants you had about 80 percent of hard protectors and soft foam, and the textile components, that other 20 percent, was to fasten those portions onto the hockey player's body. Much like in the ENs how we have soccer shin guards, we have fence masks. Antonio Pompeo, that case— Is that the rationale for the decision of Bauer, though? In terms of— Did Bauer say the reason we're finding this to be sports equipment is because it's 80 percent pads? Well, they found that it was prima facie classifiable as sports equipment. I don't think there was a magic number that triggered it. Was there a class for hockey equipment in 9506? There was. Specific? There was a specific subheading for ice hockey equipment. Here there is no specific subheading for motorcycle equipment or motocross equipment. So we have to use a magic wand to figure out where it goes. Well, in terms of it will go into another provision. It will go into a basket provision. If it were to be classifiable in 9506, which we don't maintain because it does not rise to that level of protection, Le Mans gear. As the trial court found, what wearers are doing when they're going on these motocross or motorcycle rides in a competitive fashion, they're strapping on elbow pads, wrist guards, shin pads, these sort of protectors that are described by the ENs to 9506, that compact, substantial, specific padding with minimal textile components. But that's not the merchandise that's at issue here. But you don't get this level of protection out of Bauer, a rule of law. You get this level of protection analysis inquiry from? From the explanatory notes. From the explanatory notes. From the explanatory notes. So you're not relying on our case law. You're relying on the explanatory notes for this concept. Well, I think that there's sort of a navigation that the trial court did below, and as our position is, between Bauer and the explanatory notes. And that's as follows. When we look at the tariff, we look at the heading, and we look at equipment. As counsel pointed out, it's not defined as equipment. So we go into the common meaning, and then we have necessary, useful, and appropriate. But then what does that mean? Where do we go from there? That's still sort of vague and amorphous because so many things could be necessary, useful, and appropriate to a given sporting activity. I would maintain that the only thing necessary, useful, and appropriate to motocross or motorcycle riding is the bike itself. That's it. And so then Bauer got rid of the necessary. And now it's just specially designed and intended for use. Once again, how much direction can that give in a case when you're dealing with sports clothing versus sports equipment? You wear a baseball hat and a baseball shirt, and you're playing in a baseball game. Does that make it sports equipment? What about the tariff terms of 6211 where there's ski suits and swimsuits? Those are provided for in clothing provisions. But those are specifically identified. Those are specifically identified. It's not a catch-all type of provision. How about then, you know, wetsuits, as you, as this court brought up before as an example? Wetsuits were classifiable as sports clothing under Chapter 61 and 62. You know, if we were to do specially designed and intended for use, then so much of these sports-related apparel would be lumped into sports equipment. So we're supposed to ignore that test that was laid out at Bauer? I just think that it's, I think it's a helpful test in terms of to just sort of give some guidance as to, you know, is this more like sports equipment or sports clothing? But in a case like this where, you know, there are some, there are some attributes, I think that the only recourse is to look to the ENs as the trial court did, and as we did in our brief, and to say, okay, what is in the ENs here that is even remotely like the articles that are Lamont's articles? And if you look at subsection, at the ENs where it lists 14 different categories of merchandise that is contemplated as equipment, only one of them is remotely apparel-like, and that's 13. And what weight do you think we give to ENs? I think when there's, there's definitions such as equipment that is, I guess, unexplained or ambiguous, I think it's a guidance. And I think here it's, it's a necessary reference point. But what do we say in rubies about? Well, you know, I mean, they don't, you know, they're not controlling by any means. You know, it's at the court's election if the ENs are helpful. And as long as they don't contradict tariff terms or not imparting incidental characteristics to the tariff terms, then it's okay to resort to the ENs. In a recent case by this court in a store wall, when the tariff term was ambiguous, the ENs were consulted to give guidance because it clarified the scope of the tariff terms. And I would submit to this court that in much like in the store wall case, that's what we're asking of this court too, to look to the ENs in order to give guidance to basically these amorphous terms. Can you think of anything else that you wear while playing a sport other than pads that you would classify as sports equipment? Well, in terms of a helmet, for sure. I think anything that has... But nothing with textile other than hockey pants, is that what you're saying? Well, the textile that would fasten, you know, say a chinstrap on a helmet, there's a textile portion there. A textile portion that will fit a wrist guard that is being worn in hockey or some other sort of competitive sport where you have that. Where that textile component is just fitting that on the wearer's body, and it's minimal only for that purpose of positioning and fastening the article. That's what I think would rise to equipment, as long as that padding itself is substantial and durable and thick. So that would be sports equipment? I think in that sense. Well, what if I had a suit that I use for football? Okay. And every time I went out on the field, I had my shoulder pads blown up with air so that they would have protection for my shoulders. Same for my elbows, same for my knees and my hips and my back. Are you wearing anything else? I'm not wearing anything. And then all of a sudden, I end up with just a regular suit. Is that sports equipment? Because it's usable on the football field? Is that the first line of padding that you're using? Yes. No other padding? No other padding. And it's designed to absorb the blows and tackles? Any tackler who comes after me can tackle me and protect me. And in that case, then I'd have to agree with you, that I'd have to say that that rises to the level of protective sports equipment. Even though I could deflate it and walk out and go to the party next door after I'm finished playing football, even though it might be dirty and muddy. And wear the same suit? Yes. Well, first of all, I think if you could create such a suit, it would be very something special. Then we'd have a pad case. But I think in terms of that would make it, in a way, almost more like more sports clothing. Because, like I mentioned before, the chapters 61 and 62 include articles of apparel that have protective features. There's that dual purpose. It can be worn as clothing for decency, for adornment, but it could also have that protective function. Whereas 9506 is solely protective. You're wearing it solely for protection. You're not wearing it for decency. You're not wearing a suit to go out into town afterwards. So are you saying then if it's a hybrid, it would fall in the 61 and 62? Yes. If it's strictly protective for sports functions, it would be in 95? Yes. Is that the definition that we can use? I believe that is a definition that this court could adopt. Yes. Your Honor. Let me ask you the same question I asked your opposing counsel. Do you differentiate between these items? Do you see a difference between the jerseys and the pants? Well, I mean, I think there's levels of degree there. I think with the jerseys, you only have 10% of the weight of the article has any padding in it whatsoever. And that's in select portions. I mean, 90% is textile. You know, when it comes to questions like, you know, the pants where you're almost double, you know, in terms of about 50% of the weight of the pads, it's climbing up that spectrum. But then there's still the wearers who are wearing these pants are still wearing the knee pads underneath it, the shin guards underneath it. So I think that there is some gradations between the merchandise itself, but they're still predominantly textile. I believe the jackets, it's 20% to 25% of the weight are the padding. That means we're dealing with 75% to 80% that's textile. You know, whereas in Bauer, we had 80% that we were dealing with. I know we're getting into percentages here, but I think that's just more representative. Isn't that a different test than the one you previously articulated, which is what is the purpose of the textile? So if you've got 50% padding, but the whole purpose of the textile is to keep that 50% padding where it is, doesn't that satisfy your first test, even though it doesn't satisfy your percentage test? If it's solely protective and not being worn as clothing, and it's just to position, and once again, it's substantial padding, I think that's where the weight comes into it because it goes into the padding, the nature of it. Is it durable? Is it hard? Is it protective? That's where the weighting comes into that standard. But yes, if it's just to fasten with as minimal textile components as possible. But the difference here between the Bauer hockey pants and the pants, these LeMans pants, is what? Percentage, in your mind? I think there's that. There's also, you know, with LeMans, the court's analysis, I mean with the Bauer, the court's analysis was a little different because there was this specific ice hockey subheading with which the court was contemplating, is this going to be ice hockey equipment? Here, we're just dealing with equipment in general. And so I think that's a distinguishing factor in Bauer as well. But it is a matter, to a certain degree, it is a matter of degree, yes. Your Honor, if there are no further questions of the court, I believe that the court should affirm the trial court's decision below for the reasons set forth. Thank you, Mr. Waldman. Thanks. Ms. Griffin. Your Honor, as to the explanatory notes, the role of the explanatory notes are different than they were in Storwell. In Storwell, the explanatory notes had specific language, specifically excluding a certain item, racks, from the heading at issue. Here, there is no such specific inclusion or exclusion. There is merely a list of examples. And this court has decided a number of cases that hold that you cannot simply infer requirements from examples and use those inferred requirements to narrow the language, the broad common meaning of a tariff heading. Ruby's Costume, Midwest of Cannon Falls, Michael Simon, and also Archer Daniels Midland. As to the issue of whether goods need to be protective or solely protective, the solely protective supposed requirement that the government points to is from the explanatory notes. And moreover, we believe that there is substantial evidence below that has established the protective nature of the goods especially vis-a-vis the requirements of the sports in which they are used. Thank you. Thank you. The case is submitted.